1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  KEVIN J. BARRY (CABN 229748)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6840
7       FAX: (415) 436-7234
        Email: kevin.barry@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,              )  Case No. 24-CR-0224 RFL
                                           )
14          Plaintiff,                     )
                                           )
15     v.                                  )  **UNITED STATES' SENTENCING**
                                           )  **MEMORANDUM**
16  OSCAR LLEWELLYN DANIELS,               )
                                           )  Hearing Date:  January 29, 2026
17          Defendant.                     )  Hearing Time: 2:00 PM
                                           )
18  _____       )  Hon. Rita F. Lin

19
20                          **INTRODUCTION**

21          The defendant, Oscar Daniels, stands before the Court following his guilty plea to the single

22  Count of the captioned Indictment charging him with being a felon in possession of a firearm, in

23  violation of Title 18, United States Code, Section 922(g)(1).  The defendant also admitted the same

24  conduct in Charge Nine of the Form 12 in related case Nos. 08-CR-0910 RFL and 14-CR-0558 RFL.

25  The government submits this sentencing memorandum to inform the Court that it has no objections to

26  the Presentence Report and to recommend that the Court sentence Defendant to a term at the high end of

27  the Guidelines range for the offense of conviction, or 125 months, followed by a consecutive term of 24

28  months for the supervised release violation, for a total of 149 months, followed by three years of

UNITED STATES' SENTENCING MEMO          1
24-CR-0224 RFL

supervised release.

## DEFENDANT'S OFFENSE CONDUCT

On December 9, 2023, a person made a call for service to the San Francisco Police Department (SFPD) indicating that Defendant Daniels was armed with a firearm.  Officers responded to the area where he was reported but were unable to locate him.  An officer ran a records check on the Defendant and learned that he was on parole for attempted murder and was wanted for a parole violation.  Daniels was also serving a term of federal supervised release, and there was an active warrant for him for violating the terms of his supervised release.

The next day, the reporting party reached out to one of the officers and indicated that the Defendant was in the area.  The person also stated that the Defendant threatened them and that they were afraid for their safety.  Officers responded, but once again did not locate Daniels.

On December 11, 2023, the reporting person called police again and reported that the Defendant was in the area.  Officers established surveillance and saw the Defendant at the intersection of Hyde and Ellis Streets.  Several officers then approached.  Daniels attempted to flee, but officers were able to arrest him.

At the time, the Defendant was wearing a satchel around his upper body.  After it was removed from his body, officers found a loaded .380 caliber semiautomatic firearm inside the satchel.  The firearm is a HI Point Firearms model CF 380, 380 caliber pistol, serial number 5192706.  It was loaded with five rounds of 380 caliber ammunition, with one round in the chamber.  A further search of the Defendant recovered (1) a baggie that tested presumptively positive for methamphetamine (16.7 grams gross weight); (2) a baggie containing lactose, which is a common cutting agent; (3) a plastic bindle containing a substance that tested presumptively positive for heroin; (4) a plastic pill bottle with an unmeasured and untested quantity of what appeared to be heroin residue; and (5) a digital scale.

The Defendant's possession of a more-than-personal use quantity of methamphetamine, when coupled with a cutting agent and a digital scale, establishes that he possessed the methamphetamine for distribution to others.  His possession of multiple controlled substances also supports that conclusion, as does his presence in an area that is notorious for open-air drug transactions.  The fact that Daniels possessed the firearm during and in relation to his possession with intent to distribute methamphetamine

1  can be seen in the fact that he had the weapon on his person, easily accessible in a satchel, and that it
2  was loaded with a round in the chamber, ready to be fired.

3                                    **SENTENCING GUIDELINES CALCULATION**

4          The base offense level provided in the Presentence Report (PSR) is 24, which applies to a
5  defendant who committed the offense after being convicted of at least two prior felony crimes of
6  violence.  U.S.S.G. § 2K2.1(a)(2).  Paragraph 15 of the PSR cites a conviction for California Penal Code
7  Section 245(a)(1)—Assault with Great Bodily Injury not Involving a Firearm—and a conviction for
8  California Penal Code Section 187(a)—Attempted Murder—as the two crime of violence.  The citation
9  to Section 245(a)(1) is an inadvertent error.[1]

10         Defendant Daniels has been convicted of Infliction of Corporeal Injury on a Spouse/Cohabitant,
11 in violation of California Penal Code Section 273.5(a).  PSR ¶ 36.  This constitutes a crime of violence.
12 *United States v. Walker*, 953 F.3d 577, 579 (9th Cir. 2020) (finding that Section 273.5(a) is a crime of
13 violence because it "punishes a 'person who willfully inflicts' injury upon a cohabitant"); *see also*
14 *United States v. Culling*, Case No. 22-10341, 2024 WL 3023196, at *1 (June 17, 2024) (finding that
15 Section 273.5 remains a crime of violence following *Borden v. United States*, 593 U.S. 420, 429
16 (2021)).  Therefore, the base offense level in the PSR is correct, even though it cites an incorrect statute
17 of conviction for one of the crimes of violence.

18         a.    <u>Base Offense Level</u>:                                   24
19               (U.S.S.G. § 2K2.1(a)(2))
               (Two prior crimes of violence)

20         b.    <u>Specific Offense Characteristics</u>:                    +4
21               (U.S.S.G. § 2K2.1(b)(7)(B))
               (Possession of firearm in connection
22              with another felony offense)

23         c.    <u>Acceptance of Responsibility</u>:                       -3
               (U.S.S.G. § 3E1.1(a),(b))

24         d.    <u>Adjusted Offense Level</u>:                              25

25 The Probation Officer correctly determined that Defendant merits a criminal history calculation of V, as
26

27
_____

28         [1] The Probation Officer will amend the PSR to reflect this conviction in ¶ 15 once the Court
resolves the objections to the PSR at sentencing.

1    he has a host of prior felony convictions and was on supervised release at the time of the offense.  PSR

2    ¶¶ 30-40.  With an adjusted offense level of 25, this results in a range of 125 months.

3        As the Form 12 indicates, the Guidelines range for the supervised release violation is 30-37

4    months, with a statutory maximum of 24 months.  Case No. 14-CR-0558 RFL, Dkt. 45 at 8.

5                        **SECTION 3553(A) FACTORS**

6        The factors listed under 18 U.S.C. § 3553(a) direct the Court to impose a sentence that is

7    sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See United States v. Carty*,

8    520 F.3d 984, 991 (9th Cir. 2008).  The key factors in this case are the nature and circumstances of the

9    offense and the history and characteristics of the defendant, 3553(a)(1), and the need for deterrence,

10   3553(a)(2)(B).  These factors indicate that a sentence at the high end of the Guidelines range, or 125

11   months, followed by 24 months for the supervised release violation, is appropriate in this case.

12       With respect to the Defendant's history and characteristics, Defendant Daniels has an extensive

13   criminal record, with the most recent convictions reflecting a disturbing pattern of violence.  The current

14   conviction represents at least the seventh adult felony the Defendant has earned.  In fact, Defendant has

15   a prior conviction from 2009 for the same conduct to which he pleaded guilty in this case, and

16   subsequent to that case, he was convicted for two crimes of violence involving firearms.  PSR ¶¶ 36-37.

17       The first, a conviction under California Penal Code Section 273.5 involved the defendant

18   threatening a woman with a knife and chasing her with a gun.  PSR ¶ 36.  When officers contacted the

19   victim, they observed that she had severe bruising on her ear and bruising on both arms.  PST ¶ 36.  The

20   second, a conviction for attempted murder, involved the Defendant pulling a firearm on a person with

21   whom he was arguing and shooting that person several times.  PSR ¶ 37.  Even his current case has

22   shades of violence, as the SFPD began looking for the Defendant when a person reported that the

23   Defendant had threatened her, that the Defendant was known to carry a gun, and that she feared for her

24   life.  PSR ¶ 6.

25       With respect to deterrence, the Defendant's prior prison terms have had no impact in preventing

26   the criminal conduct here—possessing a firearm while dealing drugs in the Tenderloin of San Francisco.

27   The Defendant has served several lengthy terms in prison: 3 years; 7 years; 4 years; and most recently, 9

28

1  years.  PSR ¶¶ 31-37.  Based on this record, for any sentence in this case to have any chance of

2  dissuading the Defendant from future crimes, it must be longer than 9 years.

3       Practically speaking, however, the most likely outcome in this case is specific deterrence through

4  incapacitation while in custody.  In order to protect the public, that term must be lengthy.  A sentence at

5  the high end of the Guidelines, or 125 months, followed by a sentence at the statutory maximum of 24

6  months for the supervised release violation, should accomplish that objective of sentencing.

7  **CONCLUSION**

8       For the reasons set forth above, the United States respectfully requests that the Court sentence

9  Defendant Oscar Daniels to a term at the high end of an adjusted offense level of 25 and a CHC of V, or

10  125 months, followed by a consecutive term of 24 months for the supervised release violation, a $100

11  special assessment, and three years of supervised release, and that it order forfeiture of the firearm and

12  ammunition found on the Defendant's person.

14  DATED: January 22, 2026                                    Respectfully submitted,

15                                                            CRAIG H. MISSAKIAN
16                                                            United States Attorney

17                                                            /s/ *Kevin J. Barry*

18                                                            _____
                                                              KEVIN J. BARRY
19                                                            Assistant United States Attorney